Che Corrington, OSB No. 216151
Email: che@hattislaw.com
Daniel M. Hattis (*pro hac vice* to be submitted)
Email: dan@hattislaw.com
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

*Attorneys for Plaintiff*
*and the Proposed Class*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| JACY GAMBLE,<br>for herself and<br>on behalf of all others similarly situated,<br><br>                        Plaintiff,<br><br>v.<br><br><br>PENNEY OPCO LLC, and<br>DOE DEFENDANTS 1 to 5,<br><br><br>                    Defendant. | Case No. 6:24-cv-1414<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE UNLAWFUL TRADE PRACTICES ACT, ORS 646.605 *et seq.***<br><br><br>DEMAND FOR JURY TRIAL |

CLASS ACTION COMPLAINT

Plaintiff Jacy Gamble, individually and on behalf of all others similarly situated, alleges as follows, on personal knowledge and the investigation of her counsel, against Defendant Penney OpCo LLC ("JCPenney" or "Defendant"):

## I.    INTRODUCTION AND SUMMARY

1.    JCPenney operates JCPenney retail stores and its website, jcpenney.com, where it advertises, markets, and sells clothing, footwear, accessories, jewelry, home furnishings, beauty products, and other related items throughout Oregon and the United States.

2.    For years, JCPenney has engaged in a massive false discount advertising scheme across nearly all of its products on both its website and in its retail stores. Specifically, JCPenney advertises perpetual, never-ending discounts for approximately 90% of its products. JCPenney's discounts typically range from between 25% to 70% off of JCPenney's advertised list prices for the products. JCPenney represents these list prices to be the regular and normal prices of the products, and the list prices function as "reference prices"[1] from which the advertised discounts are calculated.

3.    JCPenney's advertised discounts and reference prices are false because JCPenney rarely, if ever, offers its products at their advertised list price.

4.    JCPenney's deceptive pricing scheme is intended to trick consumers into believing that its products are worth, and have a market value equal to, the inflated list price, and that the lower advertised "sale" price represents a special bargain. JCPenney perpetrates this

---

[1] Oregon law defines "reference price" as "any price, whether stated in dollars, in terms of a percentage or fraction, or by any other method, to which a person compares the currently represented offering price of its own goods." OAR 137-020-0010(5)(e).

"Examples of 'reference prices' include manufacturer's suggested list or suggested retail prices; a competitor's offering price for the same or similar goods; a price at which the person formerly offered for sale or sold the same or similar goods; and an unspecified price at which the person formerly offered for sale or sold the same or similar goods suggested by the use of terms such as 'on sale,' 'reduced to,' '___% off,' or the like." OAR 137-020-0010(5)(e).

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

illegal scheme in order to induce consumers to purchase its products and to charge more for its products than it otherwise could have charged.

5.      JCPenney's false discount advertising harms consumers like Ms. Gamble by causing them to pay more than they otherwise would have paid and to buy products that they otherwise would not have bought. *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 198–99, 532 P.3d 880, 893 (2023) ("[W]hen a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception."). Customers do not enjoy the actual discounts JCPenney promises them, and the items are not in fact worth the amount that JCPenney represents to them. JCPenney's deceptive pricing scheme also artificially increases the demand for its products and causes all customers, including Ms. Gamble and Class members, to pay price premiums to JCPenney.

6.      JCPenney's false discount advertising violates the Oregon Unlawful Trade Practices Act (UTPA), ORS 646.605 *et seq.*, in numerous ways, as detailed below.

7.      Ms. Gamble brings this lawsuit individually and on behalf of a class of Oregon consumers who purchased from JCPenney one or more products advertised with a discount. Ms. Gamble seeks, for herself and for each of the Oregon class members, statutory damages of $200 or actual damages, whichever is greater. Ms. Gamble also seeks an order for injunctive relief, enjoining JCPenney from engaging in the unlawful conduct alleged herein.

## II.    THE PARTIES

8.      Plaintiff Jacy Gamble is, and at all relevant times has been, a citizen and resident of the city of Salem, in Marion County, Oregon, and is an unsophisticated consumer party.

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

9.      Defendant Penney OpCo LLC is a limited liability company with its principal place of business in Plano, Texas. Penney OpCo LLC owns and/or operates the JCPenney website jcpenney.com and 659 JCPenney brick-and-mortar retail stores throughout the United States including 4 in Oregon. Penney OpCo LLC has owned and managed the assets and brand name of JCPenney, including the JCPenney website and retail stores, since JCPenney emerged from Chapter 11 bankruptcy on December 7, 2020.

10.     Doe Defendants 1 to 5 are other entities related to Defendant Penney OpCo LLC who have engaged or are engaging in the unlawful acts alleged herein. Plaintiff anticipates amending this Complaint after discovery establishes the identities of these defendants.

## III.    <u>JURISDICTION AND VENUE</u>

11.     **<u>Subject Matter Jurisdiction.</u>** This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, and this is a proposed class action in which there are members of the proposed Class who are citizens of a state different from the Defendant.

12.     **<u>Personal Jurisdiction.</u>** This Court has personal jurisdiction over Defendant because, without limitation: (1) Defendant is authorized to do business and regularly conducts business in Oregon; (2) the claims alleged herein took place in Oregon; and/or (3) Defendant has committed tortious acts within Oregon (as alleged, without limitation, throughout this Complaint). Defendant has sufficient minimum contacts with Oregon to render the exercise of jurisdiction by this Court permissible.

13.     **<u>Venue.</u>** Venue is proper pursuant to 28 U.S.C. §1391 because Ms. Gamble is an Oregon citizen who resides in this District.

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

14.    **Divisional Venue.** The Eugene Division is the proper divisional venue under LR 3-2(b). Plaintiff Jacy Gamble resides in Marion County, which is part of the Eugene Division. Also, a substantial part of the events or omissions giving rise to the claim occurred in the Eugene Division, including without limitation, Ms. Gamble viewed the JCPenney website and made her purchases from her home in Marion County.

## IV.    <u>JCPENNEY'S FALSE DISCOUNT ADVERTISING SCHEME</u>

15.    JCPenney operates JCPenney retail stores and its website, jcpenney.com, where it advertises, markets, and sells clothing, footwear, accessories, jewelry, home furnishings, beauty products, and other related items throughout Oregon and the United States. JCPenney sells private and exclusive products of in-house brands that are only available from JCPenney, as well as products from national brands.

16.    For years, JCPenney has engaged in a massive false discount advertising scheme across approximately 90% of its products on the JCPenney website and in its retail stores. JCPenney advertises perpetual or near-perpetual discounts from a false higher reference price in order to trick its customers into believing the advertised "sale" price represents a special bargain from JCPenney's usual and regular prices. JCPenney's discounts typically range from between 25% to 70% off of JCPenney's advertised list prices for its products. However, unbeknownst to its customers, JCPenney's "sales" are never-ending, and its products are never or virtually never offered at the supposed regular price. JCPenney perpetrates this illegal scheme in order to induce consumers to purchase its products and to increase the amount it can charge for its products.

17.    JCPenney advertises these discounts extensively on its website, including in large banner images on its homepage; on the product listing pages; on the individual product pages; and on the checkout pages. JCPenney advertises these discounts in a variety of ways, such as, by

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

stating that categories of products are "XX% off" or "up to XX% off"; by advertising strikethrough list prices next to lower, purported discount prices with the word "sale" in red font next to the price; by advertising on product pages "XX% off" next to a strikethrough list price and purported "sale" price (and often advertising in bold red font a selling price even lower than of the "sale" price when using a provided coupon code); by advertising "Save $XX.XX with code" or "extra XX% off with coupon" in red font (where that coupon code is provided in the advertisement itself and JCPenney provides a prominent "Apply" button to apply the code in the shopping cart such that JCPenney ensures every single purchaser applies the coupon code and receives the purportedly discounted price); by describing a supposed discount price as a "LIMITED TIME SPECIAL!" or a "FLASH SALE!" in italicized red font; and by identifying the supposed savings next to each item in the customer's shopping cart, as well as stating "Total Savings: $XX.XX" directly below the total price of the order throughout the entire purchase process.

18.     Below are example screenshots from JCPenney's website:

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

## JCPenney Homepage July 24, 2024



## JCPenney Product List Page August 13, 2024



**JCPenney Product Page July 24, 2024**



**JCPenney Shopping Cart August 12, 2024**



**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

19.      JCPenney likewise advertises these discounts extensively throughout its retail

stores, including on large signs next to clothing racks, shelves, and tables. On these large signs,

JCPenney advertises products with a "sale" price alongside the product's "reg." price. In some

cases, JCPenney will also advertise a "XX% OFF" discount next to the "sale" price and "reg."

price for the product. Below are example photos taken at a JCPenney retail store on August 14,

2024. All of the products listed in the photos below are exclusive products of in-house JCPenney

brands that are only offered by JCPenney.






HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

20.    JCPenney advertises false regular prices and phony discounts for over 90% of the products it offers.

21.    For example, on August 21, 2024, JCPenney represented that the "Worthington Womens Victoria Block Heel Pumps" had a regular list price of $60 and were on "**sale**" for $34.99, such that consumers would save "41% off" of the regular list price, and that consumers could purchase them now for even less, "**$27.99** *with code* ***UMBRELLA***." The Pumps were an exclusive JCPenney product from JCPenney's in-house brand Worthington.

### JCPenney Product Webpage August 21, 2024



22.    In reality, the Worthington Womens Victoria Block Heel Pumps listed regular price of $60 was not its regular price.

23.    Instead, JCPenney always offered the Pumps at a discount from the purported regular price of $60. Counsel's investigation shows that the Pumps were never—not for a single day—offered at the $60 price. In fact, in the prior 6 months, the highest price the Pumps were

ever offered for was $33.99, and they typically were offered for between $17.99 and $31.99. And

in the prior month, JCPenney had usually offered the Pumps for between $17.99 to $19.99.

24.    For example, on July 26, 2024, JCPenney offered the Pumps for $19.99:

**JCPenney Product Webpage July 26, 2024**



25.    Thus, JCPenney customers who purchased the Pumps during the purported

August 21, 2024 "sale" at the $27.99 advertised discounted price (41% advertised discount plus

an additional $7 off with the provided coupon code) were not receiving the advertised and

promised discount. Indeed, customers who paid the supposed "sale" price (with two different

supposed discounts applied) were actually being tricked by JCPenney into paying <u>more</u> than

JCPenney's true regular price for the Pumps.

26.    To use another product as an example, on August 21, 2024, JCPenney represented

that the "Casual Comfort Solid 7-pc Dorm In A Bag" (the "Bedding") had a regular list price of

$160 and was on "<span style="color:red">sale</span>" for $89.99, such that consumers would save "43% off" of the regular list

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

price, and that consumers could purchase now it for even less, "**$71.99** *with code* ***UMBRELLA***." The Bedding was an exclusive JCPenney product from JCPenney's in-house brand Casual Comfort.

## JCPenney Product Webpage August 21, 2024



27.    In reality, the Casual Comfort Solid 7-pc Dorm In A Bag's listed regular price of $160 was not its regular price. Instead, JCPenney had always advertised it at a discount from the purported regular price of $160—ever since JCPenney first introduced the product over a month earlier around July 7, 2024.

28.    In fact, on the very first day that JCPenney offered the product, JCPenney offered the bedding for $59.99. And since then, JCPenney had usually offered the Bedding for between $59.99 and $62.99.

29.    Thus customers who paid the supposed "sale" price of $71.99 for the Bedding on August 21, 2024 were not receiving the promised discount from the purported $160 regular

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

price. Indeed, they were actually being tricked by JCPenney into paying <u>more</u> than JCPenney's regular price for the Bedding.

30.    JCPenney also advertises "free" offers for its products, such as "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free." Advertised "free" offers such as these are viewed both under Oregon law and by reasonable consumers to mean that the consumer is getting the "free" item(s) at no cost in conjunction with the purchase of the first item at no more than that item's regular price. However, in all cases, JCPenney's promise of "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free" is false or misleading. Whenever JCPenney makes such a purported "free" offer, JCPenney inflates the first item's selling price to its never otherwise charged list price. Because the item is "discounted" by up to 50-70% off the list price at all other times, this means JCPenney is directly recovering all of the cost, or even more than the cost, of the "free" item(s) by increasing the price of the first item(s), such that the free offer is illusory, and the customer is not getting any deal at all.

31.    For example, from July 27, 2024 through July 31, 2024, JCPenney offered the "Arizona Jean Co Fairhaven Womens Adjustable Strap Footbed Sandals" (the "Sandals") at their $60 list price with a "***BUY 1 GET 2 FOR FREE LIMITED TIME SPECIAL!***" The Sandals were an exclusive JCPenney product from JCPenney's in-house brand Arizona Jean Co.

32.    However, on August 1, 2024, when the "Buy 1 Get 2 Free" sales event had ended, JCPenney offered the Sandals for $13.99 using a provided coupon code. In other words, customers paid 43% <u>more</u> ($6.01 <u>more</u>) per pair of Sandals by buying them during the "Buy 1 Get 2 Free" sales event (at an average $20 per pair of Sandals) than they would have paid if they had skipped the "sale" and bought them afterwards at $13.99 per pair of Sandals. See the screenshots of the Sandals taken on July 31, 2024, and August 1, 2024, below.

CLASS ACTION COMPLAINT                      - 13 -

**July 31, 2024**                    **August 1, 2024**





33.    Meanwhile, the advertised regular price of $60 for the Arizona Jean Co Fairhaven Womens Adjustable Strap Footbed Sandals is not their true regular price. Rather, since March 11, 2024, the most JCPenney had ever offered the Sandals for was $33.99, and the Sandals had usually been offered for between $13.99 and $24.99.

34.    Thus, customers never received the promised discount on the Sandals. And, when the Sandals were offered at the $60 price with a "free" offer, the customers were not receiving the "free" offer at all because JCPenney was directly recovering all of the cost—indeed, <u>more</u> than the cost—of the "free" item(s) by increasing the price of the first pair(s) far above their regular selling price.

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

V.    **PLAINTIFF'S ALLEGATIONS ARE BASED ON HER COUNSEL'S
COMPREHENSIVE INVESTIGATION INTO JCPENNEY'S PRACTICES**

35.    Plaintiff's allegations are based on her counsel's comprehensive investigation into
JCPenney's false discount advertising practices. Plaintiff's counsel has been monitoring and
scraping JCPenney's website on an automated daily basis with a proprietary software program
since October 10, 2015. Plaintiff's counsel has compiled and extracted daily pricing and
marketing data from the JCPenney website for nearly all of the products JCPenney has offered
during this time. In total, Plaintiff's counsel has assembled and analyzed a comprehensive
historical database of daily prices and time-stamped screenshots of over 200 million daily
product offerings for over 800,000 products over this period.

36.    Plaintiff's counsel's exhaustive big-data analysis of millions of data points,
including since December 7, 2020 (the date Defendant Penney OpCo acquired and began
managing the operations of JCPenney) shows that JCPenney has advertised perpetual or near-
perpetual discounts for approximately 90% of the products that it offers. The advertised website-
wide "sale" events and advertised percentage-off and dollar discounts were false, and
JCPenney's list prices (i.e., reference prices) from which the discounts were calculated were
false and inflated.

37.    Plaintiff's counsel also visited multiple JCPenney retail stores to investigate
JCPenney's in-store practices. Based on the investigation of Plaintiff's counsel, JCPenney offers
and advertises its products with identical list prices and at substantially the same sale prices both
on the JCPenney website and in its retail stores.

38.    In fact, JCPenney effectively treats its online and in-store sales channels as the
same. Customers can make purchases through the JCPenney website and pick the items up in-
store that same day. JCPenney also encourages its customers, in-store, to view JCPenney's

CLASS ACTION COMPLAINT                   - 15 -

website for additional colors or styles of the items that the customers are viewing live in the

retail store. JCPenney even has its own JCPenney app to make shopping easier to do on the

phone.

## VI.    JCPENNEY'S FALSE DISCOUNT ADVERTISING SCHEME HARMS CONSUMERS AND VIOLATES OREGON LAW

39.    Decades of academic research has established that the use of reference prices,

such as those utilized by JCPenney, materially impacts consumers' behavior. A reference price

affects a consumer's perception of the value of the transaction, the consumer's willingness to

make the purchase, and the amount of money the consumer is willing to pay for the product.[2]

40.    When a reference price is bona fide and truthful, it may help consumers in making

informed purchasing decisions. In contrast, consumers are harmed when retailers, such as

JCPenney, advertise their products with inflated false reference prices. The false reference prices

---

[2] *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826 (2023); Mark Armstrong & Yongmin Chen, *Discount Pricing*, 58 Econ. Inquiry 1614 (2020); Rajesh Chandrashekaran & Dhruv Grewal, *Assimilation of Advertised Reference Prices: The Moderating Role of Involvement*, 79 J. Retailing 53 (2003); Pilsik Choi & Keith S. Coulter, *It's Not All Relative: The Effects of Mental and Physical Positioning of Comparative Prices on Absolute Versus Relative Discount Assessment*, 88 J. Retailing 512 (2012); Larry D. Compeau & Dhruv Grewal, *Comparative Price Advertising: An Integrative Review*, 17 J. Pub. Pol'y & Mktg. 257 (1998); Larry D. Compeau, Dhruv Grewal & Rajesh Chandrashekaran, *Comparative Price Advertising: Believe It or Not*, 36 J. Consumer Aff. 284 (2002); David Friedman, *Reconsidering Fictitious Pricing*, 100 Minn. L. Rev. 921 (2016); Dhruv Grewal & Larry D. Compeau, *Consumer Responses to Price and its Contextual Information Cues: A Synthesis of Past Research, a Conceptual Framework, and Avenues for Further Research*, in 3 Rev. of Mktg. Res. 109 (Naresh K. Malhotra ed., 2007); Daniel J. Howard & Roger A. Kerin, *Broadening the Scope of Reference Price Advertising Research: A Field Study of Consumer Shopping Involvement*, 70 J. Mktg. 185 (2006); Aradhna Krishna, Richard Briesch, Donald R. Lehmann & Hong Yuan, *A Meta-Analysis of the Impact of Price Presentation on Perceived Savings*, 78 J. Retailing 101 (2002); Balaji C. Krishnan, Sujay Dutta & Subhash Jha, *Effectiveness of Exaggerated Advertised Reference Prices: The Role of Decision Time Pressure*, 89 J. Retailing 105 (2013); Gorkan Ahmetoglu, Adrian Furnham, & Patrick Fagan, *Pricing Practices: A Critical Review of their Effects on Consumer Perceptions and Behavior*, 21 J. of Retailing & Consumer Servs. 696 (2014); Bruce L. Alford & Abhijit Biswas, *The Effects of Discount Level, Price Consciousness and Sale Proneness on Consumers' Price Perception and Behavioral Intention*, 55 J. Bus. Res. 775 (2002); and Tridib Mazumdar, S. P. Raj & Indrahit Sinha, *Reference Price Research: Review and Propositions*, 69 J. Mktg. 84 (2005).

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

deceive consumers, deprive consumers of a fair opportunity to accurately evaluate the offer, and result in purchasing decisions based on false pretenses.

41.    As a direct and proximate result of JCPenney's false reference prices and false discounts, Plaintiff and Class members were harmed and suffered ascertainable losses of money or property.

42.    First, Plaintiff and Class members were harmed because they would not have purchased the items at the prices they paid had they known that the discounts were phony and that the items had not in fact been regularly offered at the higher listed price. *See Clark v. Eddie Bauer LLC*, 371 Or. 177, 198–99, 532 P.3d 880, 893 (2023) ("[W]hen a person acts in response to the deception by spending money that the person would not otherwise have spent, the person has been injured to the extent of the purchase price as a result of that deception."). Consumers that are presented with discounts are substantially more likely to make the purchase. "Nearly all consumers (94%) search for a deal or offer when shopping online," "81% of [consumers] say finding a great offer or discount is on their mind throughout the entire purchase journey," and "two-thirds of consumers have made a purchase they weren't originally planning to make solely based on finding a coupon or discount." RetailMeNot Survey: Deals and Promotional Offers Drive Incremental Purchases Online, Especially Among Millennial Buyers (prnewswire.com).

43.    Second, Plaintiff and Class members were harmed because they did not receive the benefits of their bargain. Plaintiff and Class members did not enjoy the actual discounts JCPenney represented and promised to them. Plaintiff and class members did not receive items that were worth the inflated amount that JCPenney represented to them; the items did not regularly sell for, and were not actually worth, the fictitious and invented list price advertised by JCPenney.

CLASS ACTION COMPLAINT                - 17 -

44.     Third, Plaintiff and Class members were harmed because they paid a price premium due to illegitimately inflated demand resulting from JCPenney's deceptive pricing scheme. JCPenney's false discount advertising scheme artificially increases consumer demand for JCPenney's products, which shifts the demand curve and allows JCPenney to charge more for its products than it otherwise could have charged (i.e., a price premium) absent the misrepresentations. JCPenney's false advertising scheme has enabled JCPenney to charge everyone more for all of its products by artificially stimulating demand based on false pretenses. *See, e.g.*, Richard Staelin, Joel E. Urbany & Donald Ngwe, *Competition and the Regulation of Fictitious Pricing*, 87 J. of Mktg. 826, 836 (2023) (observing that "numerous empirical studies on the effects of promotions" have shown that promotions cause an "outward shift" in the demand curve (i.e., a price premium), which can be "substantial").

45.     In addition to harming consumers, the practice of employing false reference prices also negatively affects the integrity of competition in retail markets. A retailer's use of false reference prices constitutes an unfair method of competition and harms honest competitors that sell the same or similar products, or otherwise compete in the same market, using valid and accurate reference prices. Businesses who play by the rules—and the investors in those businesses—are penalized if the unlawful advertising practices of their competitors go unchecked.

46.     Federal and state courts have articulated the abuses that flow from false reference pricing practices. For example, the Ninth Circuit explained: "Most consumers have, at some point, purchased merchandise that was marketed as being 'on sale' because the proffered discount seemed too good to pass up. Retailers, well aware of consumers' susceptibility to a bargain, therefore have an incentive to lie to their customers by falsely claiming that their

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

products have previously sold at a far higher 'original' price in order to induce customers to purchase merchandise at a purportedly marked-down 'sale' price." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1101 (9th Cir. 2013).

47.     Oregon law prohibits false reference pricing practices such as those perpetrated by JCPenney. Oregon's Unlawful Trade Practices Act (UTPA) broadly prohibits "mak[ing] false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions." ORS 646.608(1)(j).

48.     Additionally, the UTPA prohibits sellers from using misleading price comparisons to advertise their products. ORS 646.608(ee) (citing ORS 646.883 and ORS 646.885). Specifically, the UTPA prohibits a seller from advertising a price comparison unless "[t]he seller clearly and conspicuously identifies in the advertisement the origin of the price that the seller is comparing to the seller's current price." ORS 646.883(1); ORS 646.608(ee).

49.     The UTPA also prohibits price comparison advertising which uses terms such as "regular," "reduced," "sale," and "originally" where the reference price was not in fact the retailer's own former price for the product. ORS 646.885(1); ORS 646.608(ee).

50.     The UTPA also prohibits price comparison advertising which uses terms such as "discount," "____ percent discount," "$____ discount," "____ percent off," and "$____ off" where the reference price was not in fact the retailer's own former price for the product. ORS 646.885(2); ORS 646.608(ee).

51.     In order for a reference price to be a lawful former price, it must be a price at which the seller, in the regular course of its business, made good-faith sales of the same or similar product or offered in good faith to make sales of the same or similar product within the

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

preceding 30 days or on a date which is identified in the advertisement. OAR 137-020-0010(6)(a).

52.    The UTPA also prohibits "mak[ing] a free offer in conjunction with the purchase or lease of real estate, goods or services … [a]t a price that is higher than the 'regular price.'" OAR 137-020-0015(2)(a)(C); ORS 646.608(1)(u). "Regular price" means "the price, in the same quantity [and] quality, … at which the seller or advertiser of the product or service has openly and actively sold or leased the product or service in Oregon in the most recent and regular course of business, for a reasonably substantial period of time, i.e., a 30-day period, prior to the offer." OAR 137-020-0015(1)(e).

53.    Compliance with ORS 646.608(1)(j), OAR 137-020-0010, and OAR 137-020-0015 "is established based on facts provable by the seller." ORS 646.883(2).

54.    As alleged in detail above, JCPenney's advertised reference prices and discounts violate Oregon law because, based on the investigation of Plaintiff's counsel, JCPenney's advertised reference prices are inflated and fictitious, and JCPenney's advertised percentage-off and dollars-off discounts are false. JCPenney's reference prices and discounts are false because JCPenney advertises perpetual discounts for approximately 90% of its products, and rarely if ever offers its discounted products at their advertised list price.

55.    Also, as alleged in detail above, JCPenney uses misleading price comparisons. For example, JCPenney uses strikethrough list prices without clearly and conspicuously identifying in the advertisement the origin of the price that JCPenney is comparing to the current price. As shown in the images above, JCPenney uses strikethrough list prices without any disclosure about where the strikethrough price comes from. Absent any disclosure, JCPenney's strikethrough list prices are viewed under Oregon law and by reasonable consumers to refer to

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

JCPenney's own former regular prices for those products. These strikethrough list prices are false because JCPenney in fact perpetually offers the products at lower "discounted" prices.

56.     Also, as alleged in detail above, JCPenney uses terms such as "sale," "reg." or "regular," and "___% off" even though the products are not actually offered at a discount as compared to JCPenney's own usual and former prices. And JCPenney makes no disclosure indicating that the price comparisons are to something other than to JCPenney's own former prices.

57.     Additionally, as alleged in detail above, JCPenney advertises "free" offers for its products (such as "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free"), but the "free" item(s) are not actually free because JCPenney charges a price for the purchased item that is higher than the item's regular price. In doing so, JCPenney directly recovers all, and often more than, the cost of the "free" item(s) by increasing the price of the first item, such that the "free" offer is illusory, and the customer is not getting any deal at all.

58.     The false reference price and false discount representations by JCPenney were material to the decisions of consumers to purchase each product. Because of the false reference price and false discount representations, consumers reasonably believed they would be receiving significant savings if they purchased these products, and consumers purchased these products on the basis of these representations in order to enjoy the purported discounts.

59.     JCPenney's marketing plan is to deceive its customers into believing that its products are worth, and have a market value equal to, the inflated list price, and that the lower advertised sale price represents a special bargain.

60.     The false or misleading nature of JCPenney's reference prices and discounts was, at all relevant times, masked or concealed such that an ordinary consumer exercising reasonable

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

care under all the circumstances would not have known or discovered their false or misleading nature.

61.      As a direct and proximate result of JCPenney's acts and omissions, all Oregon consumers who have purchased a product from JCPenney that was advertised with a reference price or purported discount (including "free" offers, such as "Buy 1 Get 1 Free" or "Buy 1 Get 2 Free") have been harmed and have suffered ascertainable losses.

62.      JCPenney continues to advertise false reference prices and false discounts to this day. There is no reason to believe that JCPenney will voluntarily and permanently cease its unlawful practices. Moreover, in the unlikely event that JCPenney were to cease its unlawful practices, JCPenney can and is likely to re-commence these unlawful practices.

63.      In acting toward consumers and the general public in the manner alleged herein, JCPenney acted with and was guilty of malice, fraud, and oppression and acted in a manner with a strong and negative impact upon Plaintiff, the Class, and the public.

## VII.    PLAINTIFF'S FACTUAL ALLEGATIONS

64.      Plaintiff Jacy Gamble is, and at all relevant times has been, a citizen and resident of the city of Salem, in Marion County, Oregon.

65.      Ms. Gamble is a victim of JCPenney's false discount advertising scheme.

66.      As detailed above, JCPenney's false discounting practices have been ongoing prior to and after December 7, 2020, the date Defendant Penney OpCo acquired and began managing the operations of JCPenney. During this time, Ms. Gamble has purchased products from JCPenney which were advertised with false reference prices and false discounts.

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

67.    For example, on August 26, 2023, Ms. Gamble visited the JCPenney website to shop for home items. That day, Ms. Gamble viewed and ultimately purchased some items from the JCPenney website

68.    While browsing JCPenney's website, Ms. Gamble viewed pricing and discount representations similar to those described in detail above. For example, Ms. Gamble viewed on the JCPenney homepage descriptions of purported "sales" for JCPenney's home products, which including bedding products of the type that Ms. Gamble ultimately purchased that day. As shown in the screenshot below, JCPenney advertised on its home page, and Ms. Gamble viewed, advertisements for a "Labor Day Home Sale up to 50% OFF + extra 30% OFF with coupon," and an advertising banner (which appeared at the top of every page of the website) which stated: "Up to 70% Off Home BIG BUYS."

**Homepage of JCPenney Website August 26, 2023**



69.    <u>**Swift Home Sheet Set.**</u> While browsing the JCPenney website on August 26, 2023, Ms. Gamble viewed webpages advertising the Swift Home Easy Care Bamboo Blend With

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

Bonus Pillowcases Deep Pocket Sheet Set ("Swift Home Sheet Set"). The sheet set was an exclusive JCPenney product from JCPenney's in-house brand Swift Home. Below is a partial screenshot of a webpage containing the Swift Home Sheet Set viewed by Ms. Gamble on August 26, 2023:



70.      The webpage displays a strikethrough list price of "$70 - $115" and a sale price of "**$34.29 - $55.99** *with code*" (pricing depended on the size) for the Swift Home Sheet Set.

71.      Ms. Gamble clicked on the Swift Home Sheet Set listing on the webpage and then viewed a product webpage for the sheet set. There, Ms. Gamble viewed a strikethrough list price of "$115" for the King size of the sheet set. Directly below this strikethrough list price, Ms. Gamble viewed the "sale" price of $55.99 with a coupon code.

72.      Relying on JCPenney's representations, Ms. Gamble reasonably believed that the King size Swift Home Sheet Set was normally offered and sold by JCPenney for the $115 list price. Ms. Gamble reasonably believed that the sheet set was thereby worth and had a value of

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

$115. Ms. Gamble reasonably believed that the advertised sale price of $55.99 represented a special and unusual bargain, where JCPenney was temporarily offering the sheet set at $59.00 off (51% off) the regular and normal selling price of $115. Relying on JCPenney's representations, Ms. Gamble added the sheet set to her online shopping cart and ultimately purchased the product that day.

73.    However, JCPenney's representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Gamble, JCPenney had <u>never</u> offered the King size sheet set at the purported regular price of $115. The sheet set was not in fact worth the $115 price that JCPenney had led her to believe. In fact, in the prior 6 months, JCPenney had usually offered the King size sheet set for between $44.84 and $53.20. Indeed, with its false discount representations, JCPenney had tricked Ms. Gamble into paying <u>more</u> than JCPenney's usual price for the Swift Home Sheet Set in the recent past.

74.    **Stratford Park Sheet Set.** In the same web browsing session, Ms. Gamble viewed webpages advertising the Stratford Park Illada Rayon From Bamboo Cooling Deep Pocket Sheet ("Stratford Park Sheet Set"). The sheet set was an exclusive JCPenney product from JCPenney's in-house brand Stratford Park. Below is a partial screenshot of a webpage containing the Stratford Park Sheet Set viewed by Ms. Gamble on August 26, 2023:

CLASS ACTION COMPLAINT                    - 25 -



75.    The webpage advertised the Stratford Park Sheet Set as a "*BIG BUY!*" with a strikethrough list price of "$75 – $110" and a sale price of "**$27.99 - $38.49** *with code*" (pricing depended on the size).

76.    Ms. Gamble clicked on the Stratford Park Sheet Set listing on the webpage and then viewed a product webpage for the sheet set. There, Ms. Gamble viewed a strikethrough list price of "$110" for the King size. Directly below this strikethrough list price, Ms. Gamble viewed the "sale" price of $38.49 with a coupon code.

77.    Relying on JCPenney's representations, Ms. Gamble reasonably believed that the Stratford Park Sheet Set was normally offered and sold by JCPenney for the $110 list price. Ms. Gamble reasonably believed that the sheet set was thereby worth and had a value of $110. Ms. Gamble reasonably believed that the advertised sale price of $38.49 represented a special and unusual bargain, where JCPenney was temporarily offering the sheet set at over $71 off (65%

off) the regular and normal selling price of $110. Relying on JCPenney's representations, Ms. Gamble added the sheet set to her online shopping cart and ultimately purchased the product that day.

78.     However, JCPenney's representations and advertised discounts were false and deceptive. In reality, and unbeknownst to Ms. Gamble, JCPenney had never offered the sheet set at the purported regular price of $110. The sheet set was not in fact worth the $110 price that JCPenney had led her to believe. In fact, in the prior 3 months, JCPenney had usually offered the King size sheet set for between $33.00 and $53.90. Indeed, with its false discount representations, JCPenney had tricked Ms. Gamble into paying more than JCPenney had offered the sheet set for in the recent past.

79.     After Ms. Gamble added these items to her online shopping cart, she went through JCPenney's online checkout process. There, JCPenney made additional false discount representations. During the checkout process, Ms. Gamble clicked on the prominent "Apply" coupon code button to automatically apply the coupon code which was again featured in the shopping cart. JCPenney also featured a "Total Savings" dollar amount in red directly below the total price of the order throughout the checkout process, which amount JCPenney calculated by adding together the phony advertised discount amounts for the products in her cart. Relying on JCPenney's misrepresentations, Ms. Gamble purchased the products.

80.     JCPenney's advertised reference prices and discounts were material misrepresentations and inducements to Ms. Gamble's purchases.

81.     Ms. Gamble reasonably relied on JCPenney's material misrepresentations regarding the advertised reference prices and discounts. If Ms. Gamble had known the truth, she would not have purchased the products at the prices she paid.

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

82.     As a direct and proximate result of JCPenney's acts and omissions, Ms. Gamble was harmed, suffered an injury-in-fact, and suffered an ascertainable loss of money or property.

83.     When Ms. Gamble shopped at JCPenney, she had no suspicion that JCPenney's advertised reference prices and discounts were false. JCPenney gave Ms. Gamble no reason to be suspicious. Ms. Gamble first learned of JCPenney's false advertising scheme in August 2024 when her attorneys told her about JCPenney's unlawful conduct and informed her that she was likely a victim of the scheme. Prior to this, Ms. Gamble did not know or suspect that JCPenney was engaging in a false discount advertising scheme or that she had been a victim of the scheme.

84.     Ms. Gamble has a legal right to rely now, and in the future, on the truthfulness and accuracy of JCPenney's representations regarding the advertised reference prices and discounts for its products.

85.     Ms. Gamble faces an imminent threat of future harm. Ms. Gamble would purchase from JCPenney again in the future if she could have confidence regarding the truth of JCPenney's price and discount representations. But without an injunction, Ms. Gamble has no realistic way to know which, if any, of JCPenney's list prices, discounts, and sales are not false or deceptive.

86.     Ms. Gamble will be harmed if, in the future, she is left to guess as to whether JCPenney is providing a legitimate sale or not, and whether its products are actually worth the amount that JCPenney is representing.

87.     If Ms. Gamble were to purchase again from JCPenney without JCPenney having changed its unlawful and deceptive conduct alleged herein, Ms. Gamble would be harmed on an ongoing basis and/or would be harmed once or more in the future.

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

88.    The deceptive practices and policies alleged herein, and experienced directly by Ms. Gamble, are not limited to any single product or group of products. Rather, JCPenney's deceptive advertising and sales practices, which advertise and state false reference prices and false percentage-off and dollar-off discounts, were, and continue to be, systematic and pervasive across all of JCPenney's products.

## VIII.    CLASS ALLEGATIONS

89.    Plaintiff Jacy Gamble brings this lawsuit on behalf of herself, and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3).

90.    **Class Definition**: Plaintiff seeks to represent the following Class:

> **All persons who, while in Oregon, within the applicable statute of limitations period, purchased from JCPenney one or more products advertised at a discount.**

91.    Specifically excluded from the Class are JCPenney and any entities in which JCPenney has a controlling interest, JCPenney's agents and employees, the bench officers to whom this civil action is assigned, and the members of each bench officer's staff and immediate family.

92.    **Application of the Discovery Rule.** The applicable limitations period and corresponding class period extends back to the date on which JCPenney first engaged in its unlawful false discounting practices based on the discovery rule explicitly provided for in the UTPA. ORS 646.638(6). Based on the investigation of Plaintiff's counsel, JCPenney has engaged in its unlawful false discounting practices since at least December 7, 2020, which is the date Defendant Penney OpCo acquired and began managing the operations of JCPenney.

93.    Plaintiff and the members of the Class did not know, and could not have reasonably known, about JCPenney's unlawful conduct. "[A] cause of action does not accrue

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

under the discovery rule until the claim has been discovered or, in the exercise of reasonable

care, should have been discovered." *FDIC v. Smith* 328 Or. 420, 428, 980 P.2d 141 (1999); *see

also Kaseberg v. Davis Wright Tremaine, LLP*, 351 Or. 270, 278 (2011) ("The statute of

limitations begins to run when the plaintiff knows or, in the exercise of reasonable care, should

have known facts that would make a reasonable person aware of a substantial possibility that

each of the elements of a claim exists.").

94.     When Plaintiff shopped at JCPenney, she had no suspicion that JCPenney's

advertised reference prices and discounts were false. JCPenney gave Plaintiff no reason to be

suspicious. Plaintiff first learned of JCPenney's false advertising scheme in August 2024 when

her attorneys told her about JCPenney's unlawful conduct and informed her that she was likely a

victim of the scheme. Prior to this, Plaintiff did not know or suspect that JCPenney was engaging

in a false discount advertising scheme or that she had been a victim of the scheme.

95.     Likewise, Class members would not know or suspect that JCPenney was engaging

in this deceptive pricing scheme. Reasonable consumers reasonably presume that retailers are not

engaging in unlawful conduct. Reasonable consumers would believe that JCPenney's pricing and

discount representations were true. Reasonable consumers would believe that JCPenney's list

prices (1) represent the regular and normal prices that consumers had to pay for the products;

(2) represent the recent former prices of the products (that is, the prices at which the products

were actually offered for sale before the limited-time offer went into effect); and (3) represent

the prices that consumers will have to pay for the products when the sale ends. Reasonable

consumers would believe that JCPenney's advertised discounts represent a reduction from the

regular and recent former prices of the products in the amounts advertised.

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

96.     Moreover, Plaintiff and the Class could not have, with the exercise of reasonable diligence, discovered JCPenney's false advertising scheme because, by design, its very nature is hidden and impossible for a reasonable consumer to discover.

97.     Consumers who shopped at JCPenney would have no way of knowing, with the exercise of reasonable diligence, the true daily price histories and past selling prices for the products they viewed and purchased. Consumers would have no way to know, with the exercise of reasonable diligence, that the advertised list prices were fictitious and inflated and that the advertised percentage-off and dollars-off savings were false.

98.     Plaintiff's counsel only found evidence for JCPenney's deceptive pricing scheme by conducting an extensive and expensive investigation that no reasonable person would conduct.

99.     **Numerosity.** The number of members of the Class are so numerous that joinder of all members would be impracticable. Plaintiff does not know the exact number of Class members prior to discovery. However, based on information and belief, the Class comprises thousands of individuals. The exact number and identities of Class members are contained in JCPenney's records and can be easily ascertained from those records.

100.    **Commonality and Predominance.** This action involves multiple common legal or factual questions which are capable of generating class-wide answers that will drive the resolution of this case. These common questions predominate over any questions affecting individual Class members, if any exist. These common questions include, but are not limited to, the following:

a.     Whether the alleged conduct of JCPenney violates the Oregon Unlawful Trade Practices Act, ORS 646.605 *et seq.*;

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

b.      Whether JCPenney's alleged unlawful conduct pled herein were willful violations of ORS 646.608;

c.      Whether JCPenney engaged in the reckless or knowing use or employment of the unlawful methods, acts or practices alleged herein which have been declared unlawful by ORS 646.608;

d.      Whether Plaintiff and the Class have suffered ascertainable losses as a result of JCPenney's unlawful conduct;

e.      Whether JCPenney should be ordered to pay statutory damages to Plaintiff and to each Class member; and

f.      Whether JCPenney should be enjoined from engaging in the unlawful conduct alleged herein.

101.    **Typicality.** Plaintiff's claims are typical of Class members' claims. Plaintiff and Class members all sustained injury as a direct result of JCPenney's standard practices and schemes, bring the same claims, and face the same potential defenses.

102.    **Adequacy.** Plaintiff and her counsel will fairly and adequately protect Class members' interests. Plaintiff has no interests antagonistic to Class members' interests and is committed to representing the best interests of the Class members. Moreover, Plaintiff has retained counsel with considerable experience and success in prosecuting complex class action and consumer protection cases.

103.    **Superiority.** A class action is superior to all other available methods for fairly and efficiently adjudicating this controversy. Each Class member's interests are small compared to the burden and expense required to litigate each of his or her claims individually, so it would be impractical and would not make economic sense for Class members to seek individual redress

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

for JCPenney's conduct. Individual litigation would add administrative burden on the courts, increasing the delay and expense to all parties and to the court system. Individual litigation would also create the potential for inconsistent or contradictory judgments regarding the same uniform conduct. A single adjudication would create economies of scale and comprehensive supervision by a single judge. Moreover, Plaintiff does not anticipate any difficulties in managing a class action trial.

104.    By its conduct and omissions alleged herein, JCPenney has acted and refused to act on grounds that apply generally to the Class members, such that declaratory relief is appropriate respecting the Class as a whole.

105.    JCPenney is primarily engaged in the business of selling goods. Each cause of action brought by Plaintiff against JCPenney in this Complaint arises from and are limited to statements or conduct by JCPenney that consist of representations of fact about JCPenney's business operations or goods that are or were made for the purpose of obtaining approval for, promoting, or securing sales of or commercial transactions in, JCPenney's goods or the statements are or were made in the course of delivering JCPenney's goods. Each cause of action brought by Plaintiff against JCPenney in this Complaint arises from and is limited to statements or conduct by JCPenney for which the intended audience is an actual or potential customer, or a person likely to repeat the statements to, or otherwise influence, an actual or potential customer.

## CAUSES OF ACTION

### COUNT I
### Violation of the Oregon Unlawful Trade Practices Act
### Oregon Revised Statutes § 646.605 *et seq.*

106.    Plaintiff realleges and incorporate by reference all paragraphs alleged hereinbefore.

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

107.    Plaintiff pleads this count in two separate capacities: in her individual capacity and as a putative class representative serving on behalf of all others similarly situated.

108.    The Oregon Unlawful Trade Practices Act (the "UTPA"), ORS 646.605 *et seq*., is Oregon's principal consumer protection statute. As the Supreme Court of Oregon has explained:

> The civil action authorized by ORS 646.638 is designed to encourage private enforcement of the prescribed standards of trade and commerce in aid of the act's public policies as much as to provide relief to the injured party. This is apparent from the section itself. It allows recovery of actual damages or $200, whichever is greater, plus punitive damages, costs, and attorney fees. . . . The evident purpose is to encourage private actions when the financial injury is too small to justify the expense of an ordinary lawsuit . . . . the legislature was concerned as much with devising sanctions for the prescribed standards of trade and commerce as with remedying private losses, and that such losses therefore should be viewed broadly. The private loss indeed may be so small that the common law likely would reject it as grounds for relief, yet it will support an action under the statute.

*Weigel v. Ron Tonkin Chevrolet Co.*, 298 Or. 127, 134–36, 690 P.2d 488, 493–94 (1984).

109.    Under the UTPA, "a person that suffers an ascertainable loss of money or property, real or personal, as a result of another person's willful use or employment of a method, act or practice declared unlawful under ORS 646.608, may bring an individual action in an appropriate court to recover actual damages or statutory damages of $200, whichever is greater. The court or the jury may award punitive damages, and the court may provide any equitable relief the court considers necessary or proper." ORS 646.638(1). The court is also specifically authorized to order injunctive relief "as may be necessary to ensure cessation of unlawful trade practices." ORS 646.636.

110.    The UTPA also permits a plaintiff to maintain a class action and recover the same remedies on behalf of the class, including statutory damages of $200. ORS 646.638(8)(a)-(c).

111.    JCPenney is a "person," as defined by ORS 646.605(4).

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

112.    JCPenney is engaged in "trade" and "commerce" in Oregon by advertising and offering for sale goods with reference prices and discounts to Oregon consumers on its website and in its stores that directly or indirectly affect the people of Oregon, as defined by ORS 646.605(8).

113.    JCPenney's products are "goods" that are or may be obtained primarily for personal, family or household purposes, as defined by ORS 646.605(6).

114.    Plaintiff and Class members purchased JCPenney's goods for personal, family, and/or household purposes.

115.    The unlawful methods, acts and practices pled herein were committed in the course of JCPenney's business. ORS 646.608(1).

116.    JCPenney's unlawful methods, acts and practices pled herein were "willful violations" of ORS 646.608 because JCPenney knew or should have known that its conduct was a violation, as defined by ORS 646.605(10).

117.    JCPenney's representations of reference prices and discounts are "advertisements" as defined by ORS 646.881(1).

118.    JCPenney's use of reference prices and advertised discounts are "price comparisons" as defined by ORS 646.881(2).

119.    JCPenney's list prices for its products are representations of JCPenney's own "former prices," or in the case of labeled introductory advertisements are representations of JCPenney's "future prices," as defined by ORS 646.885.

120.    By its conduct and omissions alleged herein, JCPenney has committed unlawful methods, acts or practices, including without limitation:

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

a.      JCPenney made false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions. ORS 646.608(1)(j).

b.      JCPenney advertised price comparisons that violate ORS 646.608(1)(j) by advertising reference prices that do not comply with one of the exceptions enumerated in OAR 137-020-0010(6)(a)-(g).

c.      JCPenney advertised former prices that were not prices at which JCPenney, in the regular course of its business, made good-faith sales of the same or similar products or offered in good faith to make sales of the same or similar products within the preceding 30 days or on a date which is identified in the advertisement. OAR 137-020-0010(6)(a); ORS 646.608(1)(j).

d.      JCPenney advertised "free" offers in conjunction with the purchase of goods at a price that was higher than the "regular price" as defined by OAR 137-020-0015(1)(e). OAR 137-020-0015(2)(a)(C); ORS 646.608(u).

e.      JCPenney engaged in price comparison advertising in violation of ORS 646.883(2) by failing to comply with ORS 646.608(1)(j) and ORS 646.608(4). ORS 646.608(ee).

f.      JCPenney engaged in price comparison advertising in violation of ORS 646.885(1) by using terms such as "regular," "reduced," "sale," "usually," "originally," "clearance," "liquidation," and/or "formerly" where the reference price was not in fact JCPenney's own former price, or in the case of introductory advertisements, was not JCPenney's future price. ORS 646.608(ee).

g.      JCPenney engaged in price comparison advertising in violation of ORS 646.885(2) by using terms such as "___ percent off," "$___ off," "___ percent discount" and/or "$___ discount" where the reference price was not in fact JCPenney's own former price,

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

or in the case of introductory advertisements, was not JCPenney's future price. ORS
646.608(ee).

        h.      JCPenney engaged in other unfair or deceptive conduct in trade or
commerce, as described herein. ORS 646.608(1)(u); ORS 646.608(4).

       121.    JCPenney engaged in the reckless or knowing use or employment of the unlawful
methods, acts or practices alleged herein which have been declared unlawful by ORS 646.608.

       122.    With respect to any omissions, JCPenney at all relevant times had a duty to
disclose the information in question because, inter alia: (a) JCPenney had exclusive knowledge
of material information that was not known to Plaintiff and Class members; (b) JCPenney
concealed material information from Plaintiff and Class members; and/or (c) JCPenney made
partial representations, which were false and misleading absent the omitted information.

       123.    JCPenney's misrepresentations and nondisclosures deceive and have a tendency
to deceive a reasonable consumer and the general public.

       124.    JCPenney's misrepresentations are material, in that a reasonable person would
attach importance to the information and would be induced to act on the information in making
purchase decisions.

       125.    As a direct, substantial, and/or proximate result of JCPenney's unlawful conduct,
Plaintiff and Class members were harmed, suffered injury-in-fact, and suffered ascertainable
losses of money or property.

       126.    Plaintiff and Class members reasonably relied on JCPenney's material
misrepresentations, and would not have purchased JCPenney's products at the prices that they
paid had they known the truth.

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

127.    By its conduct and omissions alleged herein, JCPenney caused the demand for its products to be artificially increased and caused all customers, including Plaintiff and Class members, to pay premiums to JCPenney. Put differently, as a result of its misrepresentations, JCPenney has been able to charge a price premium for its products that it would not be able to charge absent the misrepresentations.

128.    Plaintiff seeks for herself and each member of the Class: (1) the greater of statutory damages of $200 or actual damages; (2) punitive damages; (3) appropriate equitable relief; and (4) attorneys' fees and costs. ORS 646.638(3); ORS 646.638(8).

129.    **Permanent injunctive relief.** JCPenney's misconduct which affects and harms the general public is ongoing in part or in whole and even if such conduct were to cease, it is behavior that is capable of repetition or re-occurrence by JCPenney absent a permanent injunction. Accordingly, Plaintiff seeks an order enjoining JCPenney from committing the unlawful practices alleged herein.

130.    The balance of the equities favors the entry of permanent injunctive relief against JCPenney. Plaintiff, the members of the Class, honest competing businesses, and the general public will be irreparably harmed from JCPenney's ongoing false advertising absent the entry of permanent injunctive relief against JCPenney.

131.    Plaintiff lacks an adequate remedy at law to prevent JCPenney from engaging in the unlawful practices alleged herein. Plaintiff would shop at JCPenney again if she could have confidence regarding the truth of JCPenney's prices and the value of its products. Plaintiff will be harmed if, in the future, she is left to guess as to whether JCPenney is providing a legitimate sale or not, and whether JCPenney's products are actually worth the amount that JCPenney is representing.

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

132.    Monetary damages are not an adequate remedy at law for future harm. *Clark v. Eddie Bauer LLC*, No. 21-35334, 2024 WL 177755, at *3 (9th Cir. Jan. 17, 2024). Monetary damages are inadequate for future harm for the following reasons, without limitation: First, damages are not an adequate remedy for future harm because they will not prevent JCPenney from engaging in its unlawful conduct. Second, damages for future harm cannot be calculated with certainty and thus cannot be awarded. For example, it is impossible to know what product(s) Plaintiff may want or need in the future. Third, injunctive relief is necessary (and monetary damages do not provide a plain, adequate and complete remedy) because, without forward-looking injunctive relief enjoining the unlawful practices, the courts would be flooded with future lawsuits by, Class members, Plaintiff, and the general public for future violations of the law by JCPenney.

## PRAYER FOR RELIEF

On behalf of herself and the proposed Class, Plaintiff Jacy Gamble requests that the Court order relief and enter judgment against JCPenney as follows:

1.    Declare this action to be a proper class action, certify the proposed Class, and appoint Plaintiff and her counsel to represent the Class;

2.    Declare that the discovery rule, pursuant to, without limitation, ORS 646.638(6), applies and that the applicable limitations period—and the corresponding class period—extends back to December 7, 2020 (the date Defendant Penney OpCo acquired and began managing the operations of JCPenney);

3.    Declare that JCPenney's conduct alleged herein violates the UTPA;

4.    Order JCPenney to pay statutory damages of $200 or actual damages, whichever is greater, to Plaintiff and each of the Class members;

HATTIS & LUKACS
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com

5.      Order JCPenney to pay punitive damages to Plaintiff and each of the Class members in an amount to be determined at trial;

6.      Permanently enjoin JCPenney from engaging in the unlawful conduct alleged herein;

7.      Order that JCPenney maintain the following records for at least two years from the date of each advertisement and/or offer for sale of products, for auditing purposes to ensure compliance with the ordered injunctive relief: (1) the advertised list price for each product; (2) the offer price and/or net selling price of each item; and (3) any discount percentage and/or any other discount that was advertised and/or applicable to each product;

8.      Retain jurisdiction to monitor JCPenney's compliance with the permanent injunctive relief;

9.      Order any other equitable relief the Court deems appropriate;

10.     Order JCPenney to pay attorneys' fees, costs, and pre-judgment and post-judgment interest to the extent allowed by law; and

11.     Grant such other relief as this Court deems just and proper.


## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.


Date: August 26, 2024.

Presented by:

HATTIS & LUKACS

By: _Che Corrington_
     Che Corrington

Che Corrington, OSB No. 216151


CLASS ACTION COMPLAINT                - 40 -

Email: che@hattislaw.com
Daniel M. Hattis (*pro hac vice* to be submitted)
Email: dan@hattislaw.com
HATTIS & LUKACS
11711 SE 8th Street, Suite 120
Bellevue, WA 98005
Telephone: (425) 233-8650

*Attorneys for Plaintiff
and the Proposed Class*

**HATTIS & LUKACS**
11711 SE 8th St, Suite 120
Bellevue, WA 98005
T: 425.233.8650 | F: 425.412.7171
www.hattislaw.com